37 N.J. Super. 32 (1955)
116 A.2d 813
JOHN MARINI, PLAINTIFF-APPELLANT,
v.
THE BOROUGH OF WANAQUE, THOMAS A. JORDAN, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1955.
Decided July 5, 1955.
*34 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Salvatore D. Viviano argued the cause for plaintiff-appellant.
Mr. Louis C. Friedman argued the cause for defendants-respondents, The Borough of Wanaque and Thomas A. Jordan (Mr. Joseph D. Donato and Messrs. Donato and Donato, attorneys).
Mr. Henry Joseph argued the cause for defendants-respondents, William C. Gordon and Stella Gordon (Messrs. Isenberg and Joseph, attorneys).
*35 The opinion of the court was delivered by CONFORD, J.A.D.
This is an action in lieu of prerogative writ and for incidental injunctive relief, brought by a citizen and taxpayer. Plaintiff's complaint is that the defendant Jordan, building inspector of the respondent borough, illegally issued a building permit to the respondents Gordon for the conversion of a barn and garage on their property adjoining that of plaintiff into a two-family dwelling; and that after the completion of the conversion he wrongfully issued a certificate of occupancy of the structure. The assertion is that the building ordinance of the borough was violated in some dozen respects. Somewhat in excess of $7,500 was expended by the Gordons on the conversion. The defendants deny the violations, impugn plaintiff's status to maintain the action, attack the sufficiency of the proofs and plead laches and the 30-day limitation period fixed for such actions by R.R. 4:88-15. At the conclusion of the plaintiff's case the trial judge granted judgment dismissing the action on the basis of the insufficiency of the proofs, laches and limitations. Hence this appeal.
Plaintiff's case was substantially based upon his own testimony as to violations and his interpretation of the municipal ordinances. He is a graduate mechanical engineer but admittedly not qualified as a construction expert.
The Gordon property is an irregular parcel of land on the southeast corner of Ringwood Avenue and Railroad Avenue in Wanaque. It has 150 feet of frontage on Railroad Avenue and 178 feet on Ringwood Avenue. The Gordon home is set well back on the southwesterly portion of the property. There is a two-car garage on the southeasterly corner. At some undetermined earlier period the easterly 50 feet of this tract was owned by others and for many years there stood there, close to the street line, a two-story structure described as a barn and garage. The conversion of this building is the present bone of contention. The said parcel is now integral with the Gordons' holdings. There is also a two-story building on the southeast corner of the tract, with dwellings for two families and two stores. Still another barn on the property, *36 near the barn and garage in question, was torn down prior to institution of this action.
We have concluded the judgment should be affirmed on grounds of limitations and laches. But a passing survey of the objections raised by plaintiff will show they are in most instances unfounded or not adequately substantiated. The respondent borough has no zoning ordinance but, on September 17, 1952, it adopted a building ordinance. Section 1 thereof incorporated by reference the "Abridged Building Code" and the "Basic Building Code," 1950 editions, approved by the Building Officials Conference of America, Inc. on November 2, 1949. These codes contain, respectively, 118 and 344 closely printed pages. Section 3 of the ordinance purported to establish districts of fire limits. The most serious charge made by plaintiff is that the construction of a frame dwelling is not permitted within a fire district and that the subject structure is in fire district No. 2. But in this respect we find the ordinance void for vagueness. There are no metes and bounds descriptions or other precise circumscription of the areas of the districts. The purported descriptions are uncertain and inexact. The ordinance therefore has no legal efficacy in this behalf. Central R. Co. of New Jersey v. Elizabeth, 70 N.J.L. 578, 579, 580 (Sup. Ct. 1904). An ordinance restricting the use of private property will be strictly construed. 6 McQuillin, Municipal Corporations (3rd ed. 1949), § 20.51, p. 127.
It is charged that the building has no direct exit to the street. We read the code to make this requirement applicable only to business structures. The foundation walls are said not to go below frost line as required. There was no proof to that effect other than plaintiff's unqualified conclusion. The witness' description of the allegedly insufficient width of the foundation walls was, "ten inches, as far as I have been able to find out." The assertion that there was a prohibited boiler room below an exitway was supported only by speculative conclusions from outside observations. A charge that there is a violation in that the structure is within three feet of a lot line is premised on the assumption that *37 a line of former ownership is the lot line applicable. There is no engineering survey in evidence showing any lot line. Plaintiff made a sketch of his own based on monuments identified only by hearsay. Passing this, however, the codes do not define lots or lot lines. Ordinances which refer to lots generally define them. They should do so as the term "lot" has variable meanings. See Corden v. Zoning Board of Appeals, 131 Conn. 654, 41 A.2d 912, 915, 916, 159 A.L.R. 849 (Sup. Ct. Err. 1945). It is sometimes understood as a contiguous area in one ownership. Id., cf. Lamb v. A.D. McKee, Inc., 10 N.J. Misc. 649 (Sup. Ct. 1932); Potter v. City of Orange, 62 N.J.L. 192, 195 (Sup. Ct. 1898). In that sense the line plaintiff refers to is not a lot line as the Gordons hold on both sides of it. Moreover, no official or other plat of record showing such a lot was proven. An objection concerning a 30-foot setback line is unwarranted, the setback provision having been adopted after the construction work here involved was finished. There may be technical violations in other respects, but the proofs are not satisfactory, at best.
We prefer to rest our affirmance on the lateness of the action here instituted by plaintiff. The building permit for this work was issued February 8, 1954. The record is silent as to the plans, if any, upon which it issued. Presumably, however, the municipal record would show it was for the conversion job here done. Actual construction work began the latter part of February or the beginning of March 1954. Plaintiff appeared before the mayor and council on March 10 to complain about activities on the Gordon property, he says only insofar as a proposed subdivision of the property was concerned. He had also previously complained to the mayor about the Gordons. He observed the construction work going on at the premises and that building material was being brought in and out of the structure in February and March. He admitted he knew then that "something" was being done with the building but said he did not know exactly what. He saw the building permit there about the beginning of March. But he says he didn't read it or become *38 informed that a permit had issued until "the latter part of March" when "I went up to the Borough Clerk's office and I asked to see a permit and I was shown the permit." On April 30, 1954 the building inspector issued a temporary certificate of occupancy. On May 11, 1954 the present action was instituted.
R.R. 4:88-15(a) prohibits the bringing of an action in lieu of prerogative writ "unless it shall be commenced within 30 days of the accrual of the right to such review, hearing or relief" except as to the special provisions made in paragraph (b), none of which apply here. We thus face the question as to whether plaintiff's cause of action accrued more than 30 days prior to May 11, 1954.
The general problem of determining when a citizen circumstanced like plaintiff has been aggrieved by allegedly unlawful governmental action is not free from difficulty. On the present application the inquiry has two facets: (1) Where the wrongful action has a number of overt manifestations, which of them mature the right? (2) To what extent does the plaintiff's ignorance of the wrong toll the running of the period of limitations? It has been held that each official step in the course of an illegal program has capacity to invoke the remedy of certiorari without the necessity of awaiting specific damage or tangible manifestations. Public Service Railway Co. v. Camden, 95 N.J.L. 190 (E. & A. 1920). There can be no doubt that if the issuance of the building permit was legally unwarranted, a wrong remediable by certiorari took place at once. McGhee v. Mayor and Council of Borough of Tenafly, 126 N.J.L. 390 (Sup. Ct. 1941). And generally a cause of action is deemed to accrue when facts exist which authorize one party to maintain an action against another. 1 C.J.S., Actions, § 124, p. 1386; Tortorello v. Reinfeld, 6 N.J. 58, 65 (1950). If plaintiff's cause accrued on February 8, 1954, when the building permit issued, he is obviously barred by the rule of court cited. To meet this difficulty it is suggested: (a) plaintiff neither knew nor was subject to imputed notice of the issuance of the permit; and (b) this action is also to review the issuance of the *39 certificate of occupancy which did not occur until April 30. We proceed to a consideration of these points.
In Zimmerman v. Cherivtch, 5 N.J. Super. 590 (Law Div. 1949), the question was presented as to whether a candidate for elective public office might bring an action in lieu of prerogative writ to challenge the eligibility of a winning competitor for the office, on the ground of prior conviction for larceny, later than the 30-day period then fixed by L. 1948, c. 381 (predecessor of R.R. 4:88-15(a)). The plaintiff contended his action was timely because he had not learned of the disqualification until two weeks before he instituted suit. It was stated by the court that generally ignorance of the possession of a cause of action, at least in the absence of fraudulent concealment thereof, will not bar the operation of a statute of limitations, citing Weinstein v. Blanchard, 109 N.J.L. 332 (E. & A. 1932). The action was dismissed. It is readily perceivable that strict application of the rule of the cited case could well work an unwarranted hardship in the classes of cases where the applicant for judicial relief was not the party directly involved in the municipal proceeding under attack and consequently neither knows of the illegal action taken, until after lapse of the limitation period, nor is so situated as to be on reasonable notice thereof. The facts of the present case do not require a determination as to whether the rule stated in the Zimmerman case should be held applicable in such a situation. It clearly appears here that plaintiff knew of the issuance of the building permit and what was being done under its authority well in excess of 30 days prior to his institution of the present action. R.R. 4:88-15 (a) bars him under any reasonable concept of its proper interpretation.
Can the action nevertheless stand free of the limitation period, as asserted, in its aspect of a review of the legality of the issuance of the certificate of occupancy? We think not. The gravamen of the grievance here asserted was the allegedly wrongful permission for conversion of the building. Its subsequent use in converted form was a clearly foreseeable consequence of the official permission to do the work and *40 so too, therefore, was the issuance of the certificate. There is no suggestion that the work done was other than as authorized by the permit. The cause of action is integral. To permit a new period of limitations to run with the issuance of the certificate would, in effect, split the cause of action and evade the policy of the provision for limitations. Boulevard Improvement Company v. Academy Associates, Inc., 3 N.J. Super. 506 (Law Div. 1949); cf. Board of Education of Borough of Fort Lee v. Mayor, etc., of Fort Lee, 31 N.J. Super. 22 (App. Div. 1954). We do not imply that there are no other sanctions against a wrongful issuance of a certificate of occupancy. We are here concerned only with the impact of R.R. 4:88-15 in the peculiar circumstances here presented.
Yet one additional approach to the problem by plaintiff requires attention. It is said that the action of the building inspector was "utterly void" and that, in such case, the limitation provision does not apply. We cannot agree with either the premise or conclusion. The action was not of a kind beyond the purview or jurisdiction of the official. Cf. V.F. Zahodiakin Engineering Corp. v. Zoning Board of Adjustment of City of Summit, 8 N.J. 386, 395 (1952). If anything, it was a mistaken or irregular exercise of a ministerial function. As we have already indicated, the error, if any, presented a typical case for review by action in lieu of prerogative writ. Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953), cited by plaintiff, did not involve R.R. 4:88-15 and is therefore not applicable. It was recognized both in the V.F. Zahodiakin Engineering Corp. case, supra (8 N.J., at page 395) and in Thornton v. Village of Ridgewood, 17 N.J. 499, 510 (1955), that even where an act of a municipal body may be regarded as so "utterly void" as to be subject to collateral attack at any time, a direct review thereof must be "within the time prescribed by law." The sense of this is obvious. If distinctions are to be made between public acts which are utterly void and those which are merely irregular or illegal (assuming it to be practicable to maintain such distinctions), for purposes of applying or by-passing a provision *41 for limitation of actions, the salutary policy of quieting rights vested by limitations (Theresa Grotta Home for Convalescents v. Board of Adjustment, 19 N.J. Super. 331, 337 (App. Div. 1952)) would be gravely discommoded. In the Thornton case, supra, the court held that R.R. 4:88-15 did not, in a procedural sense, call for dismissal of the action in the nature of mandamus to compel enforcement of a zoning ordinance, there involved. (17 N.J., at page 510). In the situation there presented the court must be understood as having held that there was no showing as to when the cause of action arose. The principle of inapplicability of limitations where constitutional rights or deprivation of property or imposition of burden without notice and opportunity for hearing are implicated, Holloway v. Township of Pennsauken, 12 N.J. 371, 375 (1953), does not here concern us. We conclude that the point just examined is without merit.
Finally, we think laches additionally bars plaintiff's way. We are satisfied that he knew what was going on in respect to this structure and withheld his legal fire during a period in which he knew or had every reason to know that a substantial sum of money was being invested in the improvement of this property. Wight v. New Jersey Racing Commission, 128 N.J.L. 517 (Sup. Ct. 1942); Travis v. Borough of Highlands, 136 N.J.L. 199 (Sup. Ct. 1947); Jones v. Zoning Board of Adjustment, 28 N.J. Super. 483 (Law Div. 1953), affirmed on other grounds 32 N.J. Super. 397 (App. Div. 1954); Summer Cottagers' Association of Cape May v. City of Cape May, 34 N.J. Super. 67 (Law Div. 1954). We are aware of the policy that laches should be invoked with hesitation against a taxpayer and citizen vindicating a public right, Garrou v. Teaneck Tryon Co., supra (11 N.J., at pages 306, 307), but we deem the application of laches plainly indicated in the present case.
Affirmed.